## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|---|---|---|---|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE |
|---|---|

| PAUL PIERSON | LAURA ELIAS | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Ben Schonbrun<br>Michael Seplow | Elizabeth Fitzgerald |

**Proceedings:**    **PLAINTIFFS' MOTIONS IN LIMINE 1 THROUGH 9** (filed 02/01/10 and 02/08/10)

**DEFENDANTS' MOTIONS IN LIMINE 1 THROUGH 8** (filed 1/29/10)

## I.    INTRODUCTION & BACKGROUND

On May 13, 2008, plaintiffs Martha Rauda and Regulo Puebla ("plaintiffs"), individually and as successors in interest to Martha Puebla, filed the instant suit against defendants, City of Los Angeles, Chief William Bratton, Detective Martin Pinner, and Detective Juan Rodriguez ("defendants") alleging claims for (1) violation of 42 U.S.C. § 1983; (2) violation of Cal. Code of Civil Procedure § 377.60 et seq. (wrongful death); (3) violation of Cal. Civil Code § 52.1; (4) negligence; (5) negligent infliction of emotional distress; and (6) intentional infliction of emotional distress.

Plaintiffs' claims stem from the death of Martha Puebla, which the plaintiffs allege was caused by defendants endangering Martha Puebla's life by falsely disclosing to Vineland Boyz gang member Jose Ledesma that Martha Puebla had identified him in a six-pack photo lineup as the killer of Christian Vargas. Compl. ¶ 1. Plaintiffs allege that defendants failed to inform Martha Puebla that she was in danger or provide protection for her. Id. Plaintiffs further allege that Martha Puebla testified at Ledesma's preliminary hearing on May 1, 2003, but did not implicate or identify Ledesma in any way. Id. ¶ 18. Plaintiffs further allege that defendants' "ruse" caused Ledesma and his associates to believe that Martha Puebla had identified Ledesma, and as a result, they ordered that she be killed. On May 11, 2003, in response to this order, she was gunned

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|---|---|---|---|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

down in front of her home.  Id.

On January 29, 2010, defendants filed the instant motions in limine, numbered 1 through 8.  On February 1, 2010, and February 8, 2010 plaintiffs filed the instant motions in limine, numbered 1 through 9.  On February 5, 2010, defendants filed their oppositions to plaintiffs' motions in limine 2 and 7.  On February 8, 2010, defendants filed their oppositions to plaintiffs' motions in limine 1, 3, 4, 5, 6, and 8.  On February 12, 2010, defendants filed their opposition to plaintiffs' motion in limine 9.  On February 8, 2010, plaintiffs filed their opposition to defendants' motions in limine 1 though 8.  After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II.    DISCUSSION

## A.    PLAINTIFFS' MOTIONS IN LIMINE 1 THROUGH 8

### 1.    To Preclude any Reference to Martha Puebla Having any Association with the Vineland Boyz

Plaintiffs contend that any reference to Martha Puebla associating with the Vineland Boys gang should be excluded because such evidence is irrelevant and lacks foundation; has a risk of unfair prejudice which substantially outweighs its probative value; is inadmissible hearsay; and is inadmissible character evidence.  Mot. at i.  Specifically, plaintiffs seek to exclude any reference of: (a) Martha Puebla being a member of a gang or associating with a gang, particularly the Vineland Boyz gang; (b) any alleged gang graffiti or symbols in Martha Puebla's bedroom; (c) correspondence between Martha Puebla and anyone in prison or gang members, including Adrian Acosta; and (d) Martha Puebla's phone book.  Id. at 2.

Plaintiffs argue that "[t]he facts of consequence in this matter relate to whether the detectives' actions were the proximate cause of Ms. Puebla's death.  Any assertion that Ms. Puebla was somehow associated with the Vineland Boyz has no bearing on this matter."  Id. at 8.  Moreover, plaintiffs argue that reference to Martha Puebla having any association with the Vineland Boyz has no probative value and "no limiting instruction could possibly salvage the character damage suffered."  Id. at 11 (citing Fed. R. Evid. 403).  Plaintiffs maintain that numerous courts have observed that evidence of one's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|---|---|---|---|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

membership in a gang is highly inflammatory and arouses negative feelings in the jury towards the alleged gang member. Id. (citing Kennedy v. Lockyer, 379 F.3d 1041, 1055 (9th Cir. 2004)). Accordingly, plaintiffs argue that "since the only effect that this evidence will have on the jury is to unduly prejudice, mislead or confuse them, it must be excluded at trial." Id. at 12. Plaintiffs further argue that gang association evidence is inadmissible hearsay under Fed. R. Evid. 801 and 802 because "there is no evidence that Martha Puebla expressed to anyone that she associated with the Vineland Boyz [and] even if a witness were to somehow testify that they heard Martha Puebla had been intimate with boys who were associated with the Vineland Boyz, such statements would be hearsay." Id. Lastly, plaintiffs contend that evidence of Martha Puebla's connection to the Vineland Boyz is inadmissable character evidence because her connection to the gang does not comport with Fed. R. Evid. 404 since "nothing about [her] character is an essential element of either the claims or defenses in this action." Id. at 13 (citing United States v. Mendoza-Prado, 314 F.3d 1099, 1103 (9th Cir. 2002)).

Defendants respond that "Puebla's association with gang members . . . is relevant to and an integral component of the issues of her knowledge and understanding of the risks she faced, the issue of comparative fault, and the issue of causation." Opp'n at 3. Moreover, defendants argue that it is relevant evidence pertaining to plaintiffs' claim of a "special relationship."[1] Id. Defendants also argue that Puebla's connection with gang members is vital to their defense, because they plan to argue that defendants did not put Martha Puebla in a dangerous position that otherwise would not have existed since "Puebla was already in a substantial amount of danger as a result of her own actions, namely her continuing associations with gang members." Id. at 5. Moreover, defendants argue that plaintiffs' Fed. R. Evid. 403 argument is unpersuasive because the cases cited in plaintiffs' motion are distinguishable from the facts in this case.[2] Lastly, defendants

---

[1] Plaintiffs allege that there was a "special relationship" between defendants and Puebla, such that defendants owed her a duty of care, and that defendants knowingly lulled Puebla into a false sense of security by failing to disclose information to her about the danger she faced. Opp'n at 3.

[2] For example, plaintiffs contend that the case of Kennedy, 397 F.3d at 1055, holds that "evidence of gang membership may not be introduced . . . to prove intent or culpability." Id. at 6. In contrast, defendants argue that "the present case is not a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|---|---|---|---|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

argue that it is premature for plaintiffs to argue that gang evidence is hearsay or lacks foundation. Id. at 7. In support of this argument, defendants contend that plaintiffs have no knowledge of the means by which defendants will present their evidence at trial. Id. at 7-8.

Due to the breadth of this request, and because it is not sufficiently clear that evidence of gang membership will be wholly irrelevant and unfairly prejudicial in every application, the Court DENIES plaintiffs' motion in limine No. 1 without prejudice to it being renewed on a case by case basis at trial.

## 2.   To Exclude Claims and Statements by Maribel Castenada

The parties dispute whether Maribel Castenada ("Castenada") was a friend of Martha Puebla, but it is undisputed that both were present at Martha Puebla's house on the night of the Vargas murder. Plaintiffs move to exclude the following alleged statements: (a) any reference to Castenada telling Christian Vargas that Martha Puebla was a girl that would go all the way and liked to party; (b) any mention or reference to Martha Puebla allegedly phoning Jose Ledesma, or anyone else, before the shooting of Christian Vargas because Martha Puebla intended to "kick it" at the beach with Castenada and Vargas; (c) any reference that Martha Puebla told Castenada that "Peps" (a.k.a. Jose Ledesma) shot Vargas; (d) any reference to Martha Puebla threatening Castenada with sending the Vineland Boyz to Castenada's house; (e) any reference to Martha Puebla instructing Castenada to dump Christian Vargas's body; (f) any reference that Martha Rauda told Castenada to hide in the closet; (g) any reference that Martha Rauda, Martha Puebla, or any Puebla family members told Castenada not to cooperate with the police; (h) any mention or reference to Martha Puebla calling and accusing Jose Ledesma of shooting Christian Vargas; and (i) any mention or reference to Castenada being a friend of Martha Puebla. Mot. at 2.

Plaintiffs assert that statements attributed to Martha Puebla by Castenada are inadmissible because they do not qualify as exceptions to the hearsay rule. Id. at 7. First, plaintiffs contend that out-of-court statements made by decedent Martha Puebla are not

criminal matter and evidence of Martha Puebla's gang association would not be used to show intent or culpability—she is not on trial." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|----------|---------------------|------|-------------------|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

party admissions because Martha Puebla is not a party to this action.  Id. at 8 (citing Fed. R. Evid. 801(d)(2)(A)).  Moreover, plaintiffs argue that, although the plaintiffs are in privity with the decedent,[3] the party-admissions rule does not extend to privity based admissions.  Id. (citing In re Cornfield, 365 F. Supp. 2d 271, 277 (E.D. N.Y 2004)).  Second, plaintiffs contend that the alleged statements are not excited utterances or present sense impressions because Martha Puebla did not have personal knowledge of the startling event, as she did not see the shooting, and because, if these statements were made, they occurred substantially after the shooting.  Id. at 9-10 (citing Bemis v. Edwards, 45 F.3d 1369, 1373 (9th Cir. 1995); Brown v. Keane, 355 F.3d 82, 89-90 (2d. Cir. 2004)).  Moreover, plaintiffs argue that evidence relating to Castenada's statements attributed to Martha Puebla are inadmissible because they are irrelevant and invoke prejudice and confusion.  Id. at 12-13.  With regard to relevance, plaintiffs argue that the alleged statements, regarding "the possibility that Puebla discouraged Castenada from assisting in a murder investigation, knew the killer, or threatened to tell the Vineland Boyz where Castenada lived, would not make it more or less probable that defendants can be held liable for Puebla's death."  Id. at 12.  In addition, plaintiffs argue that, even if minimally relevant, the statements attributed to Martha Puebla might confuse the jury or mislead them merely because such statements would be made to the jury in a manner or context inconsistent with how they were made by Martha Puebla.  Id. at 13.  Accordingly, plaintiffs contend that such statements should be excluded pursuant to Fed. R. Evid. 403.  Id.

Defendants respond that Martha Puebla's alleged statements, recounted by Castenada, are highly relevant because they allegedly show that Puebla was a witness to the Vargas murder, and that Puebla herself informed Ledesma that she was a witness before the defendants did.  Opp'n at 2.  In short, defendants argue that "Castenada is an extremely important witness" who was present the night of the Vargas murder and is able to offer testimony that defendants will rely upon to defend themselves at trial.  Id. at 9.  Defendants further argue that plaintiffs' arguments are unsupported by law, and "if plaintiffs disagree with any testimony that Maribel Castenada offers at trial, they may cross-examine her and impeach her."  Id. at 3.

---

[3] According to plaintiffs, the administrator of a decedent's estate is in privity with the decedent.  Mot. at 8 (citing Bender v City of Rochester, N.Y., 765 F.2d 7, 12 (2d Cir. 1985)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|---|---|---|---|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

The Court concludes that motion in limine No. 2 is a sweeping attempt to preclude defendants from offering as evidence critical statements or testimony from Castenada. Accordingly, the Court DENIES plaintiffs' motion in limine No. 2 without prejudice to the motion being renewed on a case by case basis at trial.

**3.     To Exclude Improper Character Evidence Concerning Personal Matters or Prior Bad Acts of Martha Puebla**

Plaintiffs seek to exclude evidence relating to Martha Puebla's social and sexual behavior. Mot. at 4. Specifically, plaintiffs argue that any reference to the following should be precluded: (a) that Martha Puebla was allegedly pregnant; (b) any alleged sexual partners of Martha Puebla or her sexual conduct; (c) Martha Puebla ever dating or having a sexual relationship with Jose Ledesma; (d) Martha Puebla being a girl "that would go all the way with a guy"; (e) Martha Puebla always being ready to party; (f) Martha Puebla being a bad girl because she went to continuation school; and (g) any mention of Martha Puebla sneaking out of her house at any time without her parents' permission. Id. at 2.

Plaintiffs argue that, "even if somehow authenticated, evidence about Ms. Puebla's sexual and social behavior is not even marginally relevant to any material issue in the case" and thus should be excluded pursuant to Fed. R. Evid. 401. Id. at 6. Moreover, plaintiffs contend that admission of testimony relating to Martha Puebla's sexual and social behavior would severely prejudice her by painting her to the jury as "an unsympathetic, promiscuous bad girl." Id. at 7. Plaintiffs further contend that such testimony should be excluded as improper opinion testimony because the allegations are unsubstantiated rumors and speculation not based on anyone's personal knowledge. Id. at 8 (citing Visser v. Packer Engineering Assocs., Inc., 924 F.2d 655, 659-60 (7th Cir. 1991) (holding that any inferences or opinions offered by lay witnesses must be grounded in observation or other first-hand personal experience)).

Defendants respond that "this is a case which centers around Martha Puebla's deep involvement with Vineland Boyz" and the evidence identified in categories (a) through (g) is relevant to show that she was associating with them. Opp'n at 2. Moreover, defendants argue that evidence relating to Martha Puebla's sexual and social behavior should be admitted because her friends Cecilia Amador, Castenada, and Yvette Rafael have personal knowledge of Martha Puebla's statements to them that she was sexually

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|----------|---------------------|------|-------------------|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

involved with Ledesma and other Vineland Boyz members.  Id. at 3.  Defendants further argue that to the extent that plaintiffs continue to deny Martha Puebla's involvement with the Vineland Boyz at trial, her sexual and social behavior becomes impeachment evidence.  Id. at 4.

The Court concludes that the probative value of evidence identified in categories (a), (b) and (d) through (g) is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.  However, the Court finds that evidence identified in category (c), relating to Martha Puebla ever dating or having a sexual relationship with Jose Ledesma, is significantly more probative because the other categories because it directly addresses a central issue in the case—the cause of Martha Puebla's death based on her relationship with the person who allegedly ordered her dead as a result of the "ruse" six-pack. Accordingly, the Court GRANTS plaintiffs' motion in limine No. 3 with regard to evidence identified in categories (a), (b) and (d) through (g), but DENIES plaintiffs' motion in limine No. 3 with regard to evidence identified in category (c).

### 4.     To Preclude Testimony From Defendants' Expert Michael Lopez

Plaintiffs seek to preclude evidence from defendants' "gang expert" Michael Lopez ("Lopez"),[4] who will opine that (1) Martha Puebla was deeply involved with the Vineland Boys gang and her association with them put her at great risk; (2) Martha Puebla's testimony at the May 1, 2003 preliminary hearing, and not defendants' use of the six pack ruse, was the cause of her death; and (3) the Vineland Boyz could have killed Martha Puebla sooner if they wanted to.  Mot. at 3.

Plaintiffs argue that the testimony of Lopez does not satisfy the stringent

---

[4] Lopez's "Expert Witness Report" indicates that he has 15 years experience with the LAPD, that he was assigned to the North Hollywood Gang Enforcement Detail from 2002 through 2007 where he focused on the Vineland Boyz, that he attended the LAPD's gang seminar put on by the California gang investigators association, and that he received continual on the job training and briefing from other gang officers.  Lopez Rpt. at 1. Furthermore, Lopez indicates that he is a certified expert on the Vineland Boyz gang, as he has participated in arrests of hundreds of gang members and has conducted hundreds of gang investigations.  Id. at 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|---|---|---|---|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

requirements for expert opinion testimony under Fed. R. Evid. 702 because the opinions are nothing more than rank speculation and argument.  Id.  In support of this argument, plaintiffs contend that Lopez's opinions are not based on sufficient facts or data, are not the product of reliable principles or methods, and that there are no scientific or technical principles which have been applied to the facts of this case leading to the opinions sought to be introduced.  Id. at 6 (citing Mukhtar v. California State University, Hayward, 299 F.3d 1053, 1063-64 (9th Cir. 2002) (holding that Daubert provided a non-exclusive list of factors for determining whether expert testimony is sufficiently reliable to be admitted into evidence)).  Plaintiffs further argue that the jury is fully capable of making the determination about the cause of Martha Puebla's death and will not at all be assisted by the admission of unreliable opinions which are not based on the entire record.[5]  Id. at 3.

Defendants respond that Lopez is qualified as a "gang expert" and offers valid expert opinion testimony which will assist the trier or fact; as such, it should not be excluded.  Opp'n at 2.  Defendants argue that "the case of U.S. v. Hankey, 203 F.3d 1160 (9th Cir. 2000) is directly on point, involving a gang expert who offered an expert opinion about gang membership and retaliation for testifying against a gang member, just as Michael Lopez does."  Id.  According to defendants, Hankey held that the Daubert factors such as peer review, publication, and potential error rate, are not applicable to a gang expert's testimony, reasoning that the reliability of such testimony depended heavily on the "knowledge and experience of the expert, rather than the methodology or theory behind it."  Id. at 4 (citing Kumho Tire Co. v. Carmichaeal, 526 U.S. 137 (1999)).  Accordingly, defendants argue that plaintiffs' motion to exclude Lopez's testimony, based on a lack of scientific or technical principles, is unpersuasive because his testimony and opinions are "dependent upon the personal knowledge and experience of the expert, rather than the methodology or theory behind it."  Id. at 5.

The Court recognizes that the present case is analogous to Hankey, such that a gang expert's opinion need not be based on scientific or technical knowledge so long as the opinion is based on "some other specialized knowledge" which would assist the trier of fact in understanding the evidence or determining a fact in issue.  Hankey, 203 F.3d at

---

[5] Plaintiffs argue that Lopez, in formulating his opinion, "cherry picks" information that places Martha Puebla in the worst possible light while ignoring contrary information. Mot. at 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|---|---|---|---|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

1168.  However, the Court finds that the probative value of Lopez's opinions (1) and (2) are substantially outweighed by the risk of unfair prejudice because they involve arguments about the ultimate legal issues in the case.  See id. (citing United States v. Chischilly, 30 F.3d 1144, 1156 (9th Cir. 1994)).  On the other hand, the Court finds that Lopez's opinion (3), relating to the Vineland Boyz ability to kill Martha Puebla sooner if they wanted, may be admissible expert opinion because it is directly related to Lopez's specialized knowledge of the Vineland Boyz.

Accordingly, the Court GRANTS in part plaintiffs' motion to exclude "expert opinion" testimony from Michael Lopez regarding (1) Martha Puebla being deeply involved with the Vineland Boys gang and her association with them put her at great risk; and (2) Martha Puebla's testimony at the May 1, 2003 preliminary hearing, and not the defendants' use of the six pack ruse, was the cause of her death.  However, with regard to "expert opinion" testimony from Michael Lopez regarding his opinion that (3) the Vineland Boyz could have killed Martha Puebla sooner if they wanted to, the Court reserves decision and DENIES this motion without prejudice to its being renewed by plaintiff at trial.

### 5.    To Preclude Testimony From Defendants' Expert Gregory Yacoubian

Plaintiffs seek to preclude "police practices expert" opinion testimony from LAPD Lt. Gregory Yacoubian ("Yacoubian").  Mot. at 3.  Defendant seek to introduce the following opinions of Yacoubian: (1) the actions of Detectives Pinner and Rodriguez, including the use of the ruse, did not contribute to Martha Puebla's death; (2) Martha Puebla placed herself at risk by "continually and intimately associating" with the Vineland Boyz gang; (3) Martha Puebla was aware of the risk associated with her testimony at Ledesma's preliminary hearing; (4) Martha Puebla and her parents were advised of witness relocation by Deputy District Attorney Beth Silverman prior to the preliminary hearing and "knowingly refused" the offer of witness relocation; (5) there was no "special relationship" between Martha Puebla and the defendants; (6) Detectives Pinner and Rodriguez had no obligation, duty, or responsibility to monitor, audio-record, or review recordings of Ledesma's jailhouse conversations and their decision to audio-tape Ledesma's conversations was "extraordinary and above and beyond expected typical detectives' responsibilities in gathering evidence;" and (7) there is no policy requirement that an offer of witness relocation be documented in a chronological log.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|----------|---------------------|------|-------------------|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

Similar to plaintiffs' arguments <u>infra</u> regarding their motion in limine No.4, plaintiffs contend that none of Yacoubian's opinions meet the stringent requirements for reliability as required under Fed. R. Evid. 702. Opp'n at 4. Plaintiffs contend that his opinions are nothing more than unsubstantiated legal conclusions and speculations which merely reiterate defendants' arguments regarding central issues in the case. <u>Id.</u> at 4-6. Moreover, plaintiffs argue that all Yacoubian's opinions should be excluded because their probative value is substantially outweighed by the danger of unfair and irreparable prejudice that would result if the jury were to hear unreliable "expert" opinions. <u>Id.</u> at 14 (citing <u>Jinro America, Inc. v. Secure Investments, Inc.</u>, 266 F.3d 993, 1006 (9th Cir. 2001)).

Defendants respond in a similar manner to plaintiffs' motion in limine No. 4. Defendants contend that the law does not require that Lt. Yacoubian, as a police practices expert, base his opinions upon "science" because the admissibility of testimony based on some "other specialized knowledge" is generally construed liberally. Opp'n at 3 (citing <u>United States v. Ramsey</u>, 165 F.3d 980, 984 (D.C. Cir. 1999)). Moreover, defendants argue that Lt. Yacoubian's opinions are admissible because he clearly has the specialized knowledge to testify about police practices including interrogation techniques since his opinions are based upon his knowledge of LAPD policies and California Peace Officers Standards and Training. <u>Id.</u> at 3-4. Lastly, defendants contend that expert opinions which embrace an ultimate conclusion need not be excluded under Fed. R. Evid. 704. <u>Id.</u> at 4.

In accordance with the foregoing, the Court concludes that Yacoubian's opinions (6) and (7), relating to the detectives' obligation to audio-record or review recordings of Ledesma's jailhouse conversations and the policy requirement that an offer of witness relocation be documented in a chronological log, are admissible expert opinion under Fed. R. Evid. 702 because they are directly supported by his expertise of police practices within the LAPD. However, the Court finds that the remaining opinions provided by Yacoubian should be excluded for lack of probative value, because his report demonstrates no link between his expertise and his ultimate conclusions on these matters. Accordingly, the Court DENIES in part plaintiffs' motion in limine No. 5 with regard to opinions (6) and (7), and GRANTS in part plaintiffs' motion to exclude all of the other opinions listed above, which the Court finds are unsupported by Yacoubian's expertise.

**6.      To Exclude any Reference or Mention of any Offers or Receipt of**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|---|---|---|---|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

**Witness Relocation Assistance by Defendants to Persons other than the Puebla/Rauda Family**

Plaintiffs seek to preclude evidence relating to "two other families, the Castenadas and Mendes, [who] were offered and received witness relocation funds and services from defendants as an outgrowth of their knowledge and agreement to testify regarding the Christian Vargas and Enrique Acosta murders." Mot. at 3. Plaintiffs argue that this evidence is irrelevant because only conversations between the LAPD or District Attorney's Office and the Puebla family bear any weight to whether witness relocation was offered to the Puebla family. Id. at 6. Moreover, plaintiffs contend that this evidence is irrelevant because the surrounding circumstances of each family's receipt of witness relocation services are entirely different—namely, plaintiffs emphasize that the Puebla family did not know they were in danger because "defendant detectives did not warn the Puebla family of the mortal threat they created by falsely disclosing to Jose Ledesma that Martha Puebla had identified him as the killer of Christian Vargas." Id. at 7.

Defendants respond that reference to offers and receipt of witness relocation assistance by defendants to two other families is both relevant and extremely probative. Opp'n at 2-4. Defendants argue that this evidence is relevant to demonstrate the public knowledge of the danger that existed to anyone who testified against the Vineland Boyz. Id. at 5. Moreover, defendants contend that it was Martha Puebla's testimony at Ledesma's preliminary hearing that led to her murder, and that "evidence relating to others who testified against Ledesma and what happened to them in the aftermath of the testimony is highly probative on this point." Id. at 4.

The Court concludes that evidence relating to offers or receipt of witness relocation assistance by defendants to two other families in connection with the same murders is relevant. This evidence is probative because it demonstrates the general understanding of danger that existed for a person testifying in a case against the Vineland Boyz. Therefore, the Court DENIES plaintiffs' motion in limine No. 6.

**7. To Exclude any Reference to any Juvenile and School Records of Martha Puebla**

Plaintiffs argue that defendants should be precluded from introducing evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|---|---|---|---|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

relating to any juvenile proceedings involving Martha Puebla because there is a presumption that such matters are inadmissable.  Mot. at 5. (citing <u>Foster v. Superior Court</u>, 107 Cal. App. 3d 218 (1980)).  Moreover, plaintiffs contend that defendants should not be permitted to use her juvenile records for impeachment purposes because the infractions occurred when Martha Puebla was a minor and because this is not a criminal proceeding.  <u>Id.</u> at 5. (citing Fed. R. Evid. 609(d)).  Defendants respond that they do not intend to introduce any of Martha Puebla's juvenile records, but should be permitted to introduce such records if plaintiffs "open the door" by claiming that their daughter had never been in trouble with the police.  Opp'n at 2.

The Court GRANTS plaintiffs' motion to exclude Martha Puebla's juvenile records for purposes of defendants' case in chief.  However, the Court DENIES without prejudice plaintiffs' motion to exclude Martha Puebla's juvenile records for impeachment purposes.

In addition, plaintiffs argue that Martha Puebla's school records should be excluded because they are irrelevant, lack foundation, and are unduly prejudicial.  Mot. at 6-7.  Plaintiffs contend that the lawsuit pertains to Martha Puebla's wrongful death and defendants' liability to that end, not to her grades and attendance records from over a decade ago.  <u>Id.</u> at 5-6.  Plaintiffs further argue that, in California, pupils have a heightened privacy interest in their school records which can only be disclosed under limited circumstances.  <u>Id.</u> at 7.  Defendants respond that Martha Puebla's school records are relevant because she was suspended for gang activity at school and because plaintiffs' claim that their daughter planned to be a doctor and advance this claim in support of damages.  Opp'n at 2.

With two exceptions, the Court concludes that Martha Puebla's school records are irrelevant because they do not pertain to any material issues in the case.  However, the Court finds that the school records are relevant to plaintiff's entitlement to compensatory damages, and the Court will provide the jury with limiting instructions to that effect.  Moreover, the Court concludes that Martha Puebla's school records indicating that she was suspended because of gang activity at school can be used for impeachment purposes only.  Therefore, the Court GRANTS in part and DENIES in part plaintiffs' motion to exclude Martha Puebla's school records.

**8.    To Preclude Testimony Regarding Alleged Threats Against Martha**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|---|---|---|---|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

**Puebla or her Family**

Plaintiffs seek to exclude any reference to anyone in the Puebla family receiving threats prior to Martha Puebla's death. Mot. at 2. The threats specifically addressed by plaintiffs include a phone call allegedly received by Martha Puebla's ten year old niece and a vehicle that allegedly stopped in front of Martha Puebla's home to threaten her. Id. at 3. Plaintiffs contend that the threats should be excluded because they lack foundation, are vague and unsubstantiated, and are of little probative value. Id. at 4-5.

Defendants respond that the threats, which occurred in the days immediately following Martha Puebla's testimony at Ledesma's preliminary hearing, are probative because they support defendants' theory that her testimony was the cause of her murder. Opp'n at 2. Moreover, defendants contend that arguments regarding a lack of foundation or vagueness are premature because until defendants actually present evidence at trial these are not valid reasons to ask the court to preclude evidence. Id. at 3.

The Court finds that evidence relating to any alleged threats made against Martha Puebla or her family is probative of whether defendants' conduct caused Martha Puebla's death. Therefore, the Court DENIES plaintiffs' motion in limine No. 8.

**9.     To Preclude Purported Statement from Ledesma after Preliminary Hearing**

Plaintiffs seek to preclude a statement allegedly made by Jose Ledesma on May 1, 2003 at his preliminary hearing where Ledesma allegedly told his co-defendant Mario Catalan "Did you see them? They were picking us out in court." Mot. at 3. Plaintiffs argue that this statement is hearsay, it lacks foundation, and is also vague and ambiguous. Id. Plaintiffs further argue that this statement should be excluded under Fed. R. Evid. 403, because the probative value of this statement is far outweighed by the risk of unfair prejudice. Id. In support of this argument, plaintiffs contend that there is nothing in the statement that "them" is referring to Martha Puebla, and that the "risk of prejudice from allowing this unreliable statement to be presented to the jury far outweighs the minimum probative value it has." Id. Defendants respond that this motion in limine was filed on February 8, 2010, a week later than the filing of the other motions, and that "a failure to timely file a motion may by deemed consent to denial of the motion. Opp'n at 2 (citing Local Rule 7-12). Moreover, defendants contend that no "meet and confer" took place,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|---|---|---|---|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

or was even requested, as required by Local Rule 7-13.

The Court DENIES plaintiffs' motion in limine No. 9 without prejudice to the motion being renewed at trial, because the current record regarding how the evidence will be used is not sufficiently clear at this time.

**B.    DEFENDANTS' MOTIONS IN LIMINE 1 THROUGH 8**

**1.    To Preclude Mention of Juan Catalan's Lawsuit**

Defendants seek to preclude plaintiffs from introducing evidence regarding the Juan Catalan lawsuit for the murder of Martha Puebla.[6]  Mot. at 2.  Defendants argue that this evidence should be excluded as irrelevant because the Catalan lawsuit centered around the issues of wrongful arrest while the issues in the present case involve whether defendants' actions caused the murder of Martha Puebla.  Id. at 6.  Moreover, defendants contend that evidence of the Catalan lawsuit should be precluded under Fed. R. Evid. 403 because it will confuse the jury and it is more prejudicial than probative since the jury will feel sympathetic towards Juan Catalan, having been jailed for a crime he did not commit, and the jury will want to punish defendant detectives for their role in that investigation.  Id. at 6-7.

Plaintiffs respond that the Catalan lawsuit is relevant because of similarities between how Detectives Pinner and Rodriguez handled the Martha Puebla murder investigation, resulting in the Catalan lawsuit, and the Vargas murder investigation, resulting in the murder of Puebla—namely interrogating suspects using a six-pack with a photo circled along with a fake statement from a purported witness to the shooting. Opp'n at 1-2.  Moreover, plaintiffs contend that the Catalan lawsuit is relevant to plaintiffs' Monell claim against the City of Los Angeles because "the failure of the police

---

[6] A witness to the murder of Martha Puebla and a Vineland Boyz gang member identified Juan Catalan as Puebla's murderer.  Mot. at 5.  As a result of this information, Juan Catalan was arrested and held in jail for five months.  Id.  However, he was able to establish an alibi—that he was at the Dodgers' game—for the night of the murder, and was released at his preliminary hearing.  Id.  Juan Catalan sued the City of Los Angeles, Detective Pinner and Rodriguez, and others for the wrongful arrest and time in jail.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|---|---|---|---|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

department to take disciplinary measures against officers who have been accused of misconduct is probative evidence that the department has a policy, custom and/or practice of condoning constitutional violations by its officers." Id. at 9.

The Court finds that the Catalan lawsuit may be relevant to plaintiffs' Monell claim because it is probative to whether the LAPD has a practice of condoning particular conduct by its officers. However, the Court finds that the probative value of this evidence is outweighed by the risk of undue prejudice with regard to the liability phase of trial. Accordingly, the Court GRANTS defendants' motion to exclude evidence regarding the Catalan lawsuit, except with regard to the Monell phase of trial.[7]

> **2.      To Preclude Mention of Information Contained in the Personnel Files of Defendants Pinner and Rodriguez**

Defendants seek to "to preclude the mention or showing of information or documents contained in the personnel files of detectives Martin Pinner and Juan Rodriguez." Mot. at 1. Specifically, defendants argue that the following evidence should be excluded: (1) Detective Pinner's transfer out of the North Hollywood Homicide Detectives group following the breaking of the L.A. Times news story about the Martha Puebla case on July 2, 2008; (2) Detective Rodriguez's transfer out of the North Hollywood Homicide Detectives Office; (3) LAPD's conclusions following the internal affairs investigation of Detectives Pinner and Rodriguez relating to a personal complaint made against them regarding to the transcription and translation of a taped conversation of the phone call where Jose Ledesma placed a "hit" on Martha Puebla; (4) the findings by LAPD on the personnel complaint against Detective Pinner and Rodriguez,[8] for mentioning Martha Puebla's name as a possible witness to Jose Ledesma during his interrogation; (5) any mention of instances involving Detective Pinner relating to alleged Miranda violations; and (6) any retraining that resulted from the LAPD's review of personnel complaints against Detectives Pinner and Rodriguez. Id. at 4.

---

[7] See defendants' motion in limine No. 7 "To Trifuracte Litigation," infra.

[8] The LAPD disciplinary finding was, "ACTIONS COULD HAVE BEEN DIFFERENT," which is an admonishment directed toward an officer to change their handling of a particular situation in the future. Mot. at 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | | Date | February 22, 2010 |
|---|---|---|---|---|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | | |

Defendants argue that information contained in the personnel files of Detectives Pinner and Rodriguez should be excluded because such evidence "will only serve to confuse the jury and confuse the issues." Id. at 5 (citing Fed. R. Evid. 403).  In support of this argument, defendants contend that the evidence listed is likely to lead a jury to believe that the actions of Detectives Pinner and Rodriguez were wrong, and they may wish to punish defendants or teach them a lesson.  Id.  Moreover, defendants argue that items 3, 4 and 5 should be excluded, pursuant to Fed. R. Evid. 602, because they involve opinions of employees of the LAPD which are not based on personal knowledge.  Id. Defendants further argue that "documents and information contained in defendants' personnel files must be excluded because they are subsequent remedial measures under Fed. R. Evid. 407" and because the information contained in the documents is privileged as it is the subject of a binding, stipulated protective order.  Id. at 6-7 (citing In Re Sealed Case, 856 F. 2d 268, 271 (D.C. Cir. 1988)).

Plaintiffs respond that this evidence is admissible because it is directly relevant to plaintiffs' Monell claim against the City of Los Angeles since the "evidence shows a pattern of practice and custom of police misconduct that the LAPD ratified, condoned and failed to ameliorate."  Opp'n at 2.  Moreover, plaintiffs contend that the evidence is admissible against Pinner and Rodriguez to prove intent, knowledge, and lack of mistake, and to attack their credibility because their state of mind with regard to offering Martha Puebla's identity to a gang member goes directly to plaintiffs' claims of a Section 1983 due process violation, intentional infliction of emotional distress, and punitive damages. Id. at 2-3.  Lastly, plaintiffs contend that the stipulated protective order made during discovery should not be used to bar the admission of relevant evidence because, "now that the case is about to proceed to trial, the parties should be relieved of the restrictions of the protective order."  Id. at 9.

The Court finds that information contained in the personnel files of Detectives Pinner and Rodriguez may be relevant to plaintiffs' Monell claim because it is probative of whether the City had an informal policy, pattern, or custom of condoning officer misconduct.  See Larez v. City of Los Angeles, 946 F. 2d 630, 647 (9th Cir. 1991). However, the Court finds that the probative value of this evidence is outweighed by the risk of undue prejudice with regard to the liability phase of trial.  Accordingly, the Court GRANTS in part defendants' motion to exclude evidence regarding the detectives' personnel files, except with regard to the Monell phase of trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | | Date | February 22, 2010 |
|----------|---------------------|---|------|-------------------|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | | |

**3.     To Preclude Evidence of Other Witnesses Harmed or Killed by Gang Members in Other Unrelated Cases**

Defendants seek to exclude evidence relating to Detectives Pinner and Rodriguez's experiences in other unrelated criminal cases with gang members who intimidated, harmed, or killed witnesses to prevent them from testifying in court.  Mot. at 3. Defendants note that this motion does not seek to exclude evidence of the threats and acts of violence ordered or made by Ledesma.  Id.

Defendants argue that other reluctant witnesses in different criminal cases that Detectives Pinner and Rodriguez have dealt with have no relevance to the present case because such evidence provides no probative value to the issues in this case.  Id. Moreover, defendants contend that evidence of other witnesses in unrelated cases would be more prejudicial than probative because police deal with reluctant witnesses on a daily basis when gangs are involved, and the prejudicial danger is that this evidence may "stir the emotions of the jury, who may feel anger at the police who are simply doing their job in locating witnesses and helping to prosecute crimes."  Id. at 4.

Plaintiffs respond that "evidence of Pinner's and Rodriguez's first hand knowledge and experience about the dangers associated with gang retaliation [is relevant because it] puts them on notice of the inevitable danger that would befall a perceived eye-witness should their identity be used in a police interrogation of a gang suspect."  Opp'n at 2. Additionally, plaintiffs classify evidence of other witnesses harmed or killed by gang members in other unrelated cases as evidence of the detectives' understanding of gang culture, which plaintiffs argue is highly relative and probative to several of plaintiffs' claims that require a showing of intent—namely, claims for Section 1983 due process violations, intentional infliction of emotional distress, and punitive damages.  Id. at 3. Moreover, plaintiffs contend that the detectives' experiences in other gang investigations is not unduly prejudicial just because their knowledge about "the proclivity of gang members to retaliate against witnesses makes them look bad in a circumstance where they painted a teenage girl as a sitting target."  Id.  Instead, plaintiffs contend that this evidence is directly probative of plaintiffs' claims to show that defendants were deliberately indifferent to Martha Puebla's safety.  Id.

While the Court recognizes the relevance of the detectives' intent with regard to identifying Martha Puebla as a witness during the Ledesma interrogation, the Court finds

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|---|---|---|---|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

that evidence of other witnesses harmed or killed by gang members in other unrelated cases that Detectives Pinner and Rodriguez handled is irrelevant to the present case because such evidence would involve different circumstances than those at issue in this case.  Accordingly, the Court GRANTS defendants' motion to preclude evidence of other witnesses harmed or killed by gang members in other unrelated cases.

### 4.      To Exclude Evidence of Settlement Conferences

Defendants request that any evidence related to the settlement or any conduct or statements at the two settlements conferences between the parties be excluded at trial as inadmissible against public policy and irrelevant to any issue in the case.  Mot. at 4-5. Defendants contend that Fed. R. Evid. 408 prohibits the use of conduct or statements made in compromise negotiations regarding the claim, because such evidence is irrelevant as being motivated by a desire for peace rather than from a concession of the merits and that such a rule promotes compromise and settlement of disputes.  Id. at 4 (citing Sternberger v. United States, 401 F.2d 1012, 1018 (Ct. Cl. 1968); Perzinski v. Chevron Chemical Co., 503 F.2d 654, 658 (7th Cir. 1974)).

Plaintiffs do not oppose defendants' motion in limine regarding settlement conferences.  Opp'n at 1.  Accordingly, the Court GRANTS defendants motion in limine to exclude evidence of settlement conferences.

### 5.      To Preclude Evidence of Media Coverage

Defendants seek to preclude any document or video of media coverage concerning this case.  Mot. at 2.  Specifically, defendants' motion identifies a front page L.A. times article about the case on July 2, 2008, several other newspaper articles about the case, and a substantial number of television news segments about the case.  Id. at 3.

Defendants argue that evidence regarding media coverage of the case would be more prejudicial than probative and would confuse the jury on the issues in the case because "a jury hearing the news stories and television news segments may be inflamed by the media's portrayal of this incident, which has been at best, incomplete."  Id. at 4. (citing Charles Carter v. District of Columbia, 795 F. 2d 116 (App. D.C. 1986) (holding that plaintiffs may not prove their case by presenting a series of news articles and television news segments)).  Moreover, defendants emphasize that evidence of media

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|---|---|---|---|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

coverage should be excluded because the jury may confuse the actual facts of the case, with the facts as recounted in the newspaper and on television.  Id. at 4-5.

Plaintiffs respond the LAPD's reaction to the media coverage, including the July 2008 L.A. Times article, is relevant to plaintiffs' Monell claim because it was not until the media reported on the case that Detective Pinner was reassigned out of homicide.[9] Opp'n at 2.  Moreover, plaintiffs argue that they should be able to question prominent members of the LAPD, such as current Chief Charlie Beck, about statements made through the media because he indicated that "the statements attributed to him in the news articles were accurate."  Id.

The Court finds that the probative value of evidence relating to media coverage on this case is substantially outweighed by undue prejudice, in that such evidence may confuse the jury and may otherwise be inadmissible.  Accordingly, the Court GRANTS defendant's motion to exclude evidence of media coverage.  However, the Court finds that evidence regarding quotes made by the LAPD through the media is admissible for impeachment purposes in the event inconsistent statements are made at trial.

**6.     To Preclude Calling Former LAPD Chief William Bratton as a Live Witness at Trial**

Defendants argue that, while Chief Bratton was deposed during discovery and is named as a defendant in the lawsuit, he has no direct knowledge or involvement with the facts of this case, and the review and handling of this incident was by other members of the LAPD.  Mot. at 5.  Further, defendants argue that Chief Bratton is no longer the Chief of the LAPD and is no longer an employee of the City of Los Angeles.  Id.  Therefore, defendants contend that Chief Bratton should not be required to give live testimony at trial.  Id. at 7.

Plaintiffs do not oppose defendants' motion in limine regarding Chief Bratton's

---

[9] Plaintiffs assert that the LAPD's response to the 2008 L.A. Times article was five years after the death of Martha Puebla and four years after the false arrest of Juan Catalan.  Opp'n at 2.  Thus, plaintiffs argue that allowing Detective Pinner to remain in homicide shows the LAPD's ratification of the wrongful actions of its detectives.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|----------|---------------------|------|-------------------|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

live testimony at trial.  Opp'n at 1.  However, plaintiffs contend that they should be allowed to present to the jury the videotaped deposition testimony of Chief Bratton in lieu of his live testimony.  Id. at 2.  Accordingly, the Court GRANTS defendants' motion in limine to preclude the calling of Chief Bratton as a live witness at trial.  As to plaintiffs' request to present videotaped deposition testimony of Chief Bratton, the Court notes that such evidence may be relevant to the Monell phase of trial, but DENIES plaintiffs' request without prejudice because plaintiffs have not established that Chief Bratton has first hand knowledge of the events at issue.

### 7.    Motion to Trifurcate Litigation

Defendants request that the case be trifurcated into three phases as follows: (1) liability; (2) punitive damages; and (3) Monell if necessary.  Mot. at 1.  Defendants argue that, pursuant to Fed. R. Civ. P. 42(b), "separate trials on the issues of liability, punitive damages, and Monell are needed in furtherance of convenience, to avoid prejudice and jury confusion, and to promote the expeditious and economical trial of this action."  Id. at 2.  Specifically, defendants contend that if plaintiffs are allowed to address the issue of punitive damages before liability defendants will be prejudiced at trial because a jury could determine liability simply based on the amount of defendants' wealth.  Id. at 4.  Moreover, defendants contend that Monell and liability should be tried separately because the evidence and testimony regarding pattern, practice and custom would delve into matters that are irrelevant to the issue of whether plaintiffs' constitutional rights were violated and because an underlying constitutional rights violation must be established before a municipality can be held liable under Monell.  Id. at 5 (citing City of Los Angeles v. Heller, 475 U.S. 796 799 (1986)).

Plaintiffs respond that bifurcation pursuant to Fed. R. Civ. P. 42(b) is the exception, not the rule, and defendants have failed to meet the burden of demonstrating that bifurcation is warranted based on the particular facts and circumstances of this case.  Opp'n at 2-3 (citing Dallas v. Goldberg, 143 F. Supp. 2d 312, 315 (S.D. N.Y 2001)).  Plaintiffs argue that bifurcation of the Monell claims will not promote judicial economy because the evidence used to establish individual liability in Section 1983 against the chief of police will overlap with evidence used to establish liability against the municipality, thus bifurcation would cause plaintiffs to present the very same evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|----------|---------------------|------|-------------------|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

twice at trial.[10]  Id. at 5-6.  Additionally, plaintiffs argue that bifurcation of punitive damages is not warranted because the standard of conduct necessary to establish punitive damages is nearly identical to the standard which plaintiffs must establish to prevail on most of their federal and state law claims.  Id. at 9.  Thus, plaintiffs contend that "bifurcating the amount of punitive damages, as opposed to whether punitive damages are appropriate, would adequately address defendants' concerns while not denying plaintiffs the ability to prove their liability case."  Id. at 2.

The Court concludes, pursuant to Fed. R. Civ. P. 42(b), that the case should be bifurcated into two phases as follows: (1) liability, compensatory damages, and whether conduct is malicious, making punitive damages appropriate; and (2) Monell and calculation of the amount of punitive damages, if any.

**8.      To Preclude Mention of the Rampart Area Corruption Report, the Rampart Incident, the May Day Report and Incident, the Rodney King Incident, the Christopher Commission Report, and the Consent Decree**

Defendants seek to exclude any reference, or mention of, the Rampart Incident, the Rampart Area Corruption Report, the Rodney King Incident, the Christopher Commission Report, the Federal Consent Decree, the May Day incident and the May Day Incident Report.  Mot. at 2.  Defendants argue that mention of these reports or incidents would unduly prejudice the defendants because a person or entity accused of a particular act should not be judged on the basis of other acts or incidents.  Id. at 5 (citing United States v. Bronco, 597 F.2d 1300 (9th Cir. 1979)).  Moreover, defendants contend that such evidence is irrelevant to the present case.  Id. at 4.

Plaintiffs do not oppose defendants' motion in limine No. 8.  Opp'n at 1.

------

[10] Plaintiffs argue that if liability and Monell were bifurcated they would be required to twice present evidence of (1) other instances of misconduct by the defendants; (2) evidence of the LAPD and Chief Bratton's response to instance of misconduct committed by defendants and other officers; (3) the LAPD and Chief Bratton's ratification of the failure to discipline defendant detectives; and (4) the LAPD and Chief Bratton's failure to develop adequate policies and procedures relating to the use of ruse six-packs and appropriate disclosure to individuals involved.  Opp'n at 6-7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV08-3128-CAS (PJW) | Date | February 22, 2010 |
|---|---|---|---|
| Title | MARTHA RAUDA; ET AL. v. CITY OF LOS ANGELES; ET AL. | | |

However, plaintiffs seek to reserve the right, during the <u>Monell</u> portion of the trial, "to introduce or cross-examine witnesses regarding certain of these incidents in order to show that the LAPD fostered, maintained and/or condoned an official policy, custom or practice of violating the rights of persons within the community." <u>Id.</u>

In accordance with the foregoing, the Court concludes that evidence relating to the above mentioned incidents and reports are irrelevant and more prejudicial than probative with regard to defendants' liability and damages. Accordingly, the Court GRANTS in part defendants motion in limine to preclude any evidence referencing the Rampart Incident, the Rampart Area Corruption Report, the Rodney King Incident, the Christopher Commission Report, the Federal Consent Decree, the May Day incident, and the May Day Incident Report in the liability and damages phases of trial. However, the Court DENIES without prejudice plaintiffs' motion to exclude these incidents and reports from the <u>Monell</u> phase of trial to the motion being renewed on a case by case basis at trial.

## III.   CONCLUSION

Accordingly, the Court GRANTS in part and DENIES in part plaintiffs motions in limine, and GRANTS in part and DENIES in part defendants' motions in limine.

The Court orders counsel to participate in a **TELEPHONIC STATUS CONFERENCE on MONDAY, MARCH 8, 2010 at 12:30 P.M.** as stated on the record.

IT IS SO ORDERED.

|  |  |  | -- | : | 20 |
|---|---|---|---|---|---|
| | | Initials of Preparer | | PDP | |