1 | Benjamin Schonbrun SBN 118323
schonbrun.ben@gmail.com
2 | Michael D. Seplow, SBN 150183
mseplow@gmail.com
3 | SCHONBRUN DESIMONE SEPLOW
HARRIS HOFFMAN & HARRISON LLP
4 | 723 Ocean Front Walk
Venice, California 90291
5 | Telephone:  (310) 396-0731
Fax:  (310) 399-7040
6 |
John Raphling SBN 169554
7 | LAW OFFICES OF JOHN RAPHLING
723 Ocean Front Walk
8 | Venice, California 90291
Telephone: (310) 823-4620
9 | Fax: (310) 823-4632

10 | Attorneys for Plaintiffs
Martha Rauda and  Regulo Puebla

11 |

12 | **UNITED STATES DISTRICT  COURT**

13 | **CENTRAL DISTRICT OF THE STATE OF CALIFORNIA**

14 |

| | |
|---|---|
| 15  MARTHA RAUDA, REGULO PUEBLA, individually and as | **NO.  CV-08-3128 CAS (PJWx)** |
| 16  successors in interest to MARTHA PUEBLA, decedent, | **PLAINTIFFS' REPLY MEMORANDUM OF POINTS** |
| 17 | **AND AUTHORITIES IN SUPPORT NOTICE OF MOTION** |
|             Plaintiffs, | **AND MOTION FOR** |
| 18 | **ATTORNEYS FEES AND COSTS** |
|   vs. | **PURSUANT TO 42 U.S.C.** |
| 19 | **SECTION 1988** |
| 20  CITY OF LOS ANGELES, a public entity, CHIEF WILLIAM BRATTON, | **[DECLARATIONS OF** |
| 21  an individual, DETECTIVE MARTIN PINNER, an individual, DETECTIVE | **BENJAMIN SCHONBRUN, MICHAEL D. SEPLOW AND** |
| 22  JUAN RODRIGUEZ, an individual, AND DOES 1 THROUGH 10 | **JOHN RAPHLING IN SUPPORT THEREOF FILED UNDER** |
| 23 | **SEPARATE COVER]** |
| 24 | |
|             Defendants. | Hearing Date:  December 20, 2010 |
| 25 | Hearing Time: 10:00 a.m. |
| 26 | Courtroom: 5 |
| 27 | |
| 28 | |

1

# TABLE OF CONTENTS

2

Page(s)

3  I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

4
    II.   PLAINTIFFS ACHIEVED A HIGH DEGREE OF SUCCESS AND
5         THEREFORE ARE ENTITLED TO AN AWARD OF ATTORNEYS
          FEES CONSISTENT WITH THE AMOUNT REQUESTED . . . . . . . . . . .  1
6

7   III.  PLAINTIFFS' ATTORNEYS FEES ARE REASONABLE . . . . . . . . . . . .  6
8

9         A.    Defendants have failed to present evidence showing that the amount
10              of time spent litigating this case is unreasonable . . . . . . . . . . . . . . . .  6
11

12        B.    Plaintiffs' counsel's hourly rates are reasonable . . . . . . . . . . . . . . . .  8
13

14  IV.   PLAINTIFFS' REQUEST FOR ATTORNEYS FEES SHOULD NOT
          BE AFFECTED BASED ON INTERROGATORY RESPONSES . . . . . .  10
15

16  V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

17

18

19

20

21

22

23

24

25

26

27

28

i

1

TABLE OF AUTHORITIES

2

FEDERAL CASES

3

Page(s)

4

*City of Oklahoma City v. Tuttle*

5

471 U.S. 808 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

6

7

*Dang v. Cross*

8

422 F.3d 800 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

9

10

*Gates v. Deukmejian*

11

987 F.2d 1392 (9th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

12

13

*Gates v. Rowland*

14

39 F.3d 1439 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

15

16

*Guy v. City of San Diego*

17

608 F.3d 582 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

18

19

*Grandstaff v. City of Borger*

20

767 F.2d 161(5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

21

*Hall v. Ochs*

22

817 F.2d 920 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

23

24

*Hickman v. Taylor*

25

329 U.S. 495 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

26

27

*In Re Cendant Corp Securities Litigation*

28

343 F.3d 656 (3rd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

1

FEDERAL CASES (cont.)

2

Page(s)

3   *Larez v. City of Los Angeles*

4       946 F.2d 630 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5

6   *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*

7       507 U.S. 163(1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8

9   *Mahach-Watkins v. Depee*

10       593 F.3d 1054 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

11

12   *McCown v. City of Fontana*

13       563 F.3d 1097 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

14

15   *McRorie v. Shimoda*

16       795 F.2d 780 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

17

18   *Moreno v. City of Sacramento*

19       534 F.3d 1106 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

20   *Oviatt v. Pearce*

21       954 F.2d 1470 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

22

23   *Riverside v. Rivera*

24       477 U.S. 561 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

25

26   *Sanchez v. Matta*

27       229 F.R.D. 649 (D.N.M. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28

1

FEDERAL CASES (cont.)

2

Page(s)

3   *Wilcox v. City of Reno*

4      42 F.3d 550 (9th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5

6

7

STATUTES

8

9   Federal Rules of Civil Procedure 26(b)(3)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

10

11

12   42 U.S.C. Section 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 **I.  INTRODUCTION**

2  Plaintiffs have demonstrated that they are entitled to an award of substantial
3 attorneys fees because they prevailed on all of their claims at trial on a case
4 involving significant legal issues and because their efforts in litigating this case
5 resulted in tangible benefits and advanced significant public goals. Contrary to
6 Defendants' assertions, Plaintiffs did prevail on a *Monell* theory and established
7 that the actions of Defendants Pinner and Rodriguez were pursuant to an official
8 custom, policy or practice of the Los Angeles Police Department ("LAPD"). As a
9 result of this case, the LAPD implemented new training for its detectives
10 regarding the dangers of using real persons in ruses–training which Defendants
11 Pinner and Rodriguez had not received prior to their interrogation of double
12 murder suspect Jose Ledesma.

13  Moreover, Defendants have not shown that the hourly rates requested by
14 Plaintiffs counsel, or the amount of time they spent litigating this hard fought case,
15 are unreasonable. Finally, Defendants' contention that Plaintiffs' motion for
16 attorneys fees should be denied because Plaintiffs purportedly served incorrect
17 interrogatory responses is completely without merit. Accordingly, Plaintiffs'
18 motion for an award of attorneys fees should be granted.

19

20 **II.  PLAINTIFFS ACHIEVED A HIGH DEGREE OF SUCCESS AND**
21  **THEREFORE ARE ENTITLED TO AN AWARD OF ATTORNEYS**
22  **FEES CONSISTENT WITH THE AMOUNT REQUESTED.**

23  Despite the fact that Plaintiffs prevailed on each and every cause of action
24 asserted at trial, Defendants erroneously argue that Plaintiffs only achieved a
25 minimal level of success and therefore are not entitled to an award of attorneys
26 fees under 42 U.S.C. Section 1988. Defendants' arguments should be rejected for
27 numerous reasons.

28  Defendants have conceded, well established law provides that Plaintiffs

1.

1    should be awarded attorneys fees when they have achieved other tangible results
2    despite the award of nominal damages. *See Mahach-Watkins v. Depee*, 593 F.3d
3    1054, 1059 (9th Cir. 2010); *Guy v. City of San Diego*, 608 F.3d 582, 588-89 (9th
4    Cir. 2010); *Wilcox v. City of Reno*, 42 F.3d 550, 555 (9th Cir. 1994). Indeed, in
5    addition to the question of damages, the Court must consider "the significance of
6    the legal issue on which the plaintiff claims to have prevailed" and whether the
7    plaintiff "accomplished some public goal." *Mahach-Watkins v. Depee*, 593 F.3d
8    at 1059.[1/]

9        In this case, Defendants have acknowledged that "the legal issue of 'state
10   created' danger is an important issue." [Opposition at 15:9-10] However,
11   Defendants mistakenly contend that because Plaintiffs prevailed on their *Monell*
12   claim based on a ratification theory, that Plaintiffs did not establish that the actions
13   of Defendants Pinner and Rodriguez were pursuant to an official custom, policy or
14   practice of the LAPD. Defendants incorrectly assert that because Plaintiffs did not
15   present evidence of the improper use of ruses by other LAPD detectives, Plaintiffs
16   did not establish that the LAPD had an unconstitutional custom, policy or practice.
17   [Opposition at pp. 4-6][2/]

18   _____

19       1. As Plaintiffs have acknowledged, the fact that they only received
20   nominal damages is a factor which weighs against their attorneys fees motion.
     Nonetheless, the amount of damages awarded "is only one of many factors a court
21   should consider in calculating an award of attorney's fees." *Riverside v. Rivera*,
22   477 U.S. 561, 574 (1986).

23       2. Defendants' reliance on *City of Oklahoma City v. Tuttle*, 471 U.S. 808
24   (1985) is entirely misplaced. In *Tuttle,* a case in which the individual defendant
     was found not liable for a Section 1983 excessive force violation, the Court held
25   that a jury could not infer that the City had an unconstitutional policy of
26   inadequate training under *Monell* based on a single incident. The issue of
     ratification was simply not present in *Tuttle* where, unlike this case, there was no
27   proof "of a single action taken by a municipal policy maker." 471 U.S. at 821. In
28   this case, Plaintiffs presented evidence that William Bratton, the Chief of the
     LAPD, as well as others within the LAPD chain of command, acted affirmatively

1      However, it is well established that the existence of a pre-existing policy,

2    practice or custom can be established by evidence that the policy maker approved

3    or ratified the unlawful conduct of the officers in the underlying case. *See Larez*

4    *v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991) (" a jury could properly

5    find such policy or custom from the failure of [the Chief] . . . to take any remedial

6    steps after the violations." ). [3/]  In this case, the jury determined that former LAPD

7    Chief William Bratton, who is the official policy maker for the Los Angeles Police

8    Department, ratified the actions of Detectives Pinner and Rodriguez. This means

9    that Plaintiffs established at trial that the unconstitutional actions of Defendants

10   Pinner and Rodriguez were in conformity with official LAPD policy. *See Larez,*

11   *supra*, 946 F.2d at 646. ( "[E]vidence that [the Chief of the Los Angeles Police

12   Department], an authorized policymaker on police matters..... ratified a decision

13   that deprived plaintiffs of their constitutional rights would suffice for official

14   liability.").

15      In order to establish a *Monell* claim based on official policy, practice or

16   custom, Plaintiffs did not need to show that the LAPD affirmatively trained its

17   detectives to use ruses in the manner in which Pinner and Rodriguez acted or that

18

19

20   ───────────────────────────────────────────

21   to ratify the unconstitutional actions of Defendants Pinner and Rodriguez.

22      3. *See also Grandstaff v. City of Borger*, 767 F.2d 161, 170-71 (5th Cir.
23   1985) (Jury may find official policy based on police chief's ratification and failure
     to reprimand or discharge officers who violated plaintiff's rights noting that the
24   "disposition of the policymaker may be inferred from his conduct after the events"
25   at issue.) *cert. denied*, 480 U.S. 916 (1987), *abrogated on other grounds* in
26   *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507
     U.S. 163, 167 (1993); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986)
27   ("Policy or custom may be inferred if, after the [alleged unconstitutional actions],
28   the... officials took no steps to reprimand or discharge the [officers], or if they
     otherwise failed to admit the [officers'] conduct was in error.").

   ───────────────────────────────────────────

   3.

1  the practice was widespread throughout the LAPD.[4/]  Rather it is the fact that these
2  detectives were allowed to use the ruse in the manner that they did without any
3  reprimand or discipline from the LAPD which demonstrates the deficiencies with
4  the LAPD's training and the unconstitutional nature of LAPD's official policy.[5/]

5      The jury determined that by failing to discipline Pinner and Rodriguez that
6  the LAPD ratified their unconstitutional actions and confirmed that their actions
7  were within policy.  This is precisely why the new training that resulted from this
8  case is so important.  By implementing this new training on the dangers in using a
9  real person's name in connection with a ruse, the LAPD recognized that there
10 were serious deficiencies with their prior training. Defendants should not be
11 allowed to gloss over the fact that this case resulted in both a finding that the
12 detectives acted within LAPD policy, as well as a clear change in policy and
13 training by the LAPD,  which benefits both the LAPD (one of the nation's leading
14 police agencies) and the general public.   Therefore, it cannot be denied that this
15 case has achieved a critically important public goal for residents of the City of Los
16 Angeles, a goal which would not have been realized but for the efforts of
17 Plaintiffs' attorneys in actively litigating this action for the past two years.

18     Defendants spend a great deal of time in their Opposition rearguing the
19 evidence, despite the jury's unanimous finding that Plaintiffs prevailed on each
20 and every one of their claims.  However, such arguments about the evidence at
21 trial are irrelevant to Plaintiffs' motion for attorneys fees as it is undisputed that

22
23
_____

24     4. . Indeed, both Pinner and Rodriguez testified in deposition that they were
25  unaware of any LAPD policy or training which prohibited them from using a real
    person's name in a six pack ruse. [*See* Rodriguez depo at 43:4-44:1; Pinner depo
26  at 262:4-266:19 (Exhibits A and B to Seplow Decl.)]

27     5.  *See Oviatt v. Pearce,* 954 F.2d 1470, 1477 (9th Cir. 1992) (recognizing
28  that "a policy of inaction..."  can constitute an official policy, custom or practice
    for purposes of *Monell* liability).
_____
                                    4.

the jury determined that Defendants violated Plaintiffs' constitutional rights.[6/]

In their Opposition, Defendants chiefly rely on *McCown v. City of Fontana*, 563 F.3d 1097 (9th Cir. 2009) to argue for a reduction in Plaintiffs' attorneys fees. However, *McCown* is readily distinguishable from this case. In particular, in *McCown*, the plaintiff settled a Section 1983 case for $20,000 after eight out of his nine claims had been dismissed on summary judgment, including his *Monell* claim. 563 F.3d at 1101-02. The Ninth Circuit remanded the District Court's decision to award plaintiff $200,000 in attorneys fees in order to take into account the fact that "plaintiff obtained limited success on his pleaded claims and the result does not confer a meaningful public benefit." 563 F.3d at 1103.

In contrast, in this case, Plaintiffs prevailed on all of their claims at trial. In addition to establishing that Defendants Pinner and Rodriguez violated Plaintiffs' civil rights, Plaintiffs also established that they acted with malice, oppression and/or a conscious disregard of Plaintiffs' rights and that their unconstitutional conduct was ratified by the Chief of Police. As a result of this case, the LAPD made important fundamental changes to its training which will help protect citizens in the future and the two named defendants have promised that their future

---

6. Moreover, the jury's apportionment of fault between Plaintiffs and Defendants on Plaintiffs' wrongful death claim under California law is also irrelevant to Plaintiffs' motion for attorneys fees under Section 1988 in that there was no apportionment of fault on Plaintiffs' Section 1983 claim which established that Defendants acted with deliberate indifference towards Plaintiffs and/or their daughter. Indeed, there is joint and several liability in Section 1983 civil rights cases. *See Hall v. Ochs*, 817 F.2d 920, 926 (1st Cir. 1987). Unlike a claim for wrongful death under state law, a Section 1983 action vindicates important public rights. *See Riverside v. Rivera*, 477 U.S. at 574. Therefore, the apportionment of fault on Plaintiffs' state law claims should not in any manner diminish the significance of the determination that the Defendants were liable for violating Plaintiffs' constitutional rights. In any event, Plaintiffs' counsel have already deducted the amount of time spent on the damages portion of their case.

5.

1 actions will be guided by the lessons learned from this case.[7/]

2

3 **III.   PLAINTIFFS' ATTORNEYS' FEES ARE REASONABLE.**

4 **A.   Defendants have failed to present evidence showing that the**

5 **amount of time spent litigating this case is unreasonable.**

6 In their opposition, Defendants, without making any specific showings or

7 presenting specific evidence, challenge both the amount of hours expended on this

8 case and the hourly rates of counsel. However, Defendants' challenges do not

9 withstand scrutiny.

10 Defendants take issue with the fact that Plaintiffs had three lawyers at trial.

11 However, Mr. Seplow only billed for four hours per day of his trial time.[8/]

12 Moreover, it is common for at least two lawyers to try a case, especially difficult

13 and hard fought cases such as this one. The fact that Defendants had one lawyer

14 and a paralegal at trial (not to mention the full resources of the LAPD and its

15 investigators) does not mean that Plaintiffs' choice of counsel was unreasonable.

16

17 7. Defendants argue that this Court should make a "substantial" reduction in

18 Plaintiffs' attorneys fees as was done by the District Court in the *Mahach-Watkins*
case. (Opposition at 17:18-19). However, as Plaintiffs pointed out in their moving

19 papers, this case resulted in far more tangible benefits than *Mahach-Watkins*, in
which there was no finding of any supervisory or *Monell* liability, no admission of

20 wrongdoing by the individual defendant and no changes in training. Therefore,

21 contrary to *Manach-Watkins*, any reduction by the District Court in the amount of

22 fees requested by Plaintiffs' counsel in this case should be modest.

23 8. Defendants take issue with the fact that Mr. Raphling was added as

24 Plaintiffs' counsel and took a lead role in trying this case, even though Mr.
Schonbrun had been taking a leading role during depositions. However, Mr.

25 Raphling's role in this case should not diminish the amount of attorneys' fees

26 awarded to Plaintiffs. Indeed, Mr. Raphling has a lower hourly rate than Mr.

27 Schonbrun and none of his work was duplicative, since whoever cross-examined
the witnesses that Mr. Raphling handled at trial would have had to read and re-

28 read their deposition transcripts and spend time preparing the examinations.

6.

1  Moreover, Defendants focus only on the time spent on trial and fail to address the
2  plethora of hours spent by counsel during discovery and pre-trial proceedings.
3          The Ninth Circuit has held:

4                  The fee applicant bears the burden of documenting
5                  the appropriate hours expended in the litigation and must
6                  submit evidence in support of those hours worked. The
7                  party opposing the fee application has a burden of
8                  rebuttal that requires submission of evidence to the
9                  district court challenging the accuracy and
10                 reasonableness of the hours charged or the facts asserted
11                 by the prevailing party in its submitted affidavits.

12  *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994) (quoting *Gates v.*
13  *Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir.1993).

14          In this case, Plaintiffs presented detailed declarations and time records in
15  support of the hours they worked on this case. In response, Defendants have
16  failed to submit specific evidence challenging the reasonableness of the hours that
17  Plaintiffs spent on this case. Instead, Defendants only offer speculative arguments
18  that three counsel were not needed at trial, and that it was unnecessary for Mr.
19  Raphling to serve as trial counsel. Under these circumstances, it is apparent that
20  Defendants have failed to meet their burden to challenge the reasonableness of
21  Plaintiffs' counsel's hours. *See Gates v Rowland,* 39 F. 3d at 1449 (finding that
22  "the defendants failed to meet their burden of rebuttal by submitting evidence to
23  challenge the assertions of the plaintiffs' counsel.").

24          The Ninth Circuit has further recognized that a competent civil rights
25  lawyer must constantly revisit his work on a case and is not likely to churn fees
26  since he is working on contingency:

27                 The court may reduce the number of hours awarded
28                 because the lawyer performed unnecessarily duplicative

7.

1    work, but determining whether work is unnecessarily
2    duplicative is no easy task. When a case goes on for
3    many years, a lot of legal work product will grow stale; a
4    competent lawyer won't rely entirely on last year's, or
5    even last month's, research: Cases are decided; statutes
6    are enacted; regulations are promulgated and amended.
7    A lawyer also needs to get up to speed with the research
8    previously performed. All this is duplication, of course,
9    but it's necessary duplication; it is inherent in the process
10   of litigating over time.

11   It must also be kept in mind that lawyers are not
12   likely to spend unnecessary time on contingency fee
13   cases in the hope of inflating their fees. The payoff is too
14   uncertain, as to both the result and the amount of the fee.
15   It would therefore be the highly atypical civil rights case
16   where plaintiff's lawyer engages in churning. By and
17   large, the court should defer to the winning lawyer's
18   professional judgment as to how much time he was
19   required to spend on the case. . .

20   *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

21   In this case, Plaintiffs counsel had to revisit over a year's worth of work
22   they did during discovery in order to prepare for trial. As civil rights lawyers
23   working on contingency, Plaintiffs' counsel did the work necessary to prevail in
24   this case and did not unnecessarily waste precious time and resources on needless
25   or duplicative work.

27   **B.    Plaintiffs' counsel's hourly rates are reasonable.**
28   In their motion, Plaintiffs presented detailed declarations from two

8.

1  prominent civil rights lawyers, Carol Sobel and Barry Litt, attesting to the
2  reasonableness of the hourly rates requested by Plaintiffs' counsel ($650 for Mr.
3  Schonbrun, $590 for Mr. Seplow and $525 for Mr. Raphling).  These declarations
4  included a detailed analysis of hourly rates charged by comparable attorneys in the
5  relevant legal community.  In response, Defendants have offered nothing more
6  than the unsubstantiated opinion of attorney Thomas Hurrell that Plaintiffs'
7  counsel's rates are too high, without any reference or comparison to rates charged
8  in other specific cases, other than a cursory reference to three California Superior
9  Court cases.[9/]

10      Notably, Mr. Hurrell concedes that Mr. Raphling's rate of $525 per hour is
11  close to a reasonable rate. [Hurrell decl. at ¶ 6]  However, Defendants misconstrue
12  Mr. Hurrell's declaration and wrongfully assert that the Court in *Jochimsen v.*
13  *County of Los Angeles* reduced Mr. Raphling's hourly rate to $400. [Opposition at
14  19:23-24]  The Court did no such thing.  Instead, the trial Court in *Jochimsen*
15  simply reduced Plaintiffs' gross attorneys' fee award by 23.5% of the amount
16  requested (which included work performed by other lawyers) for "unnecessary
17  time that was incurred." [Raphling Decl at ¶¶ 3-4; Exhibit A]   The *Jochimsen*
18  court did not make any findings about Mr. Raphling's hourly rate and in fact noted
19  that Mr. Raphling and his co-counsel "demonstrated skill in prosecuting [the]
20  claim."  The case was prosecuted skillfully against a vigorous and effective
21  defense." *Id.*

22

23      9. One of the cases mentioned by Mr. Hurrell, *Aikens v County of Ventura*,
24  was not a Section 1983 civil rights case at all  Instead it was an inverse
    condemnation proceeding in Ventura County Superior Court pursuant to
25  California Code of Civil Procedure Section 1036. [Exhibit C to Seplow Decl.]
26  Further, in *Mock v. City of Los Angeles,* the California Court of Appeal determined
    that Plaintiff had not pled a Section 1983 claim and therefore was not entitled to
27  attorneys fees. [Exhibit Dto Seplow Decl.] Moreover, Mr. Hurrell's statement that
28  the hourly rate set by the Court in the *Jochimsen* case was between approximately
    $225 and $375 is simply incorrect. [Raphling Decl at ¶ 4]

1    Plaintiffs have presented detailed and competence evidence attesting to the
2    reasonableness of their requested hourly rates.   The sparse declaration of Thomas
3    Hurrell does not provide a basis to deviate from the rates requested by Plaintiffs.
4    Accordingly, Plaintiffs' counsel should be awarded their requested hourly rates.
5
6    **IV.    PLAINTIFFS' REQUEST FOR ATTORNEYS FEES SHOULD NOT**
7    **BE AFFECTED BASED ON INTERROGATORY RESPONSES.**
8         Without providing any legal support whatsoever, Defendants contend that
9    Plaintiffs violated Rules 11 and 26 of the Federal Rules of Civil Procedure with
10   respect to their interrogatory responses concerning contact with attorney Gary
11   Casselman and that as a result their motion for attorneys fees should be denied.
12        At no time have Plaintiffs Martha Rauda or Regulo Puebla personally ever
13   communicated with attorney Gary Casselman or his office. [Schonbrun Decl. at ¶¶
14   6, 9] Mr. Casselman was counsel for Plaintiff Juan Catalan in a 2005 case against
15   Defendants Pinner and Rodriguez for false arrest.   Defendants sought to discover
16   whether Plaintiffs communicated with Mr. Casselman or any other attorney about
17   filing a lawsuit about their daughter's death in order to determine when Plaintiffs
18   first learned of their possible claims against Defendants. [10] In response to
19   Interrogatory No. 14, Plaintiffs truthfully responded that they have never spoken
20   with any other attorney (other than their counsel in this case) about filing a lawsuit
21   against the LAPD for the death of their daughter. [Schonbrun Decl. at ¶ 7]
22        Interrogatory No. 13 asks: "Have you ever had any written, email or spoken
23   communications with any attorney, employee or agent of the Law Offices of Gary
24   Casselman." The manner in which this interrogatory is phrased led Plaintiffs'
25   counsel to interpret it as asking if the Plaintiffs personally ever had
26
27        10. Plaintiffs have testified that they did not learn of the LAPD's
28   involvement in their daughter's death until approximately February 2008 when
     Mr. Puebla's niece told him about an article that she read on the internet.

10.

1   communications with Mr. Casselman's firm (as opposed to any communications

2   that Plaintiffs' counsel may have had with Mr. Casselman). [Schonbrun Decl. at ¶

3   9] ¹¹/ Plaintiffs responded that they had no contact with Mr. Casselman or his

4   office.  Defendants contend that the interrogatory included both the Plaintiffs and

5   their counsel.  While Plaintiffs personally  never had any communications with

6   anyone affiliated with Mr. Casselman, Plaintiffs' counsel did have some minimal

7   communications with Mr. Casselman **after** this lawsuit had been filed. [Schonbrun

8   Decl. at ¶ 10]  In retrospect, Plaintiffs' counsel acknowledge that they should

9   have been more clear in their response to Interrogatory No. 13 to indicate that it

10  was Plaintiffs personally who never had any communications with the Casselman

11  firm. [*Id.*]  Nonetheless, any communications between Plaintiffs' counsel and

12  attorney Casselman, which clearly would reveal counsel's opinions, thought

13  process and mental impressions, are protected as attorney work product and would

14  not have been discoverable. [*Id.*]  *See In Re Cendant Corp Securities Litigation*,

15  343 F.3d 658, 663-64 (3d Cir. 2003) (recognizing almost absolute protection for

16  attorney work product which would reveal attorneys' opinions, mental impressions

17  or thought process); *Sanchez v. Matta*, 229 F.R.D. 649 (D.N.M. 2004) ("the work

18  product privilege also protects the mental processes, mental impressions, personal

19  beliefs and the litigation strategy of an attorney or his or her agents.") (citing

20  *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)); *see also* FRCP 26(b)(3) limiting

21  disclosure of trial preparation materials and providing that the court "must protect

22

23        11.   Indeed, the "you" in the interrogatory is not capitalized (as it is in the

24  Definitions section) and as other defined terms are elsewhere in the
    interrogatories.  Moreover, the interrogatory asks if a translator was used in any
25  communications with the Casselman firm.  Therefore, the manner in which the
26  interrogatory was phrased, and the context in which it was used (i.e. seeking to
    determine if Plaintiffs were aware of the LAPD's role in their daughter's death
27  prior to the filing of this lawsuit) led Plaintiffs' counsel to believe that this
28  interrogatory targeted to determine  whether Mr. Puebla and Ms. Rauda had
    personally communicated with Casselman's office. [Schonbrun Decl. at ¶¶ 8- 9]

1  against disclosure of the mental impressions, conclusions, opinions or legal

2  theories or a party's attorney. . .").[12]/

3      Defendants' attempt to use the manner in which Plaintiffs responded to

4  Interrogatory No. 13 to defeat Plaintiffs' motion for attorneys fees is utterly

5  without legal support.  Plaintiffs' counsel's inadvertent mistake in responding to

6  Interrogatory No. 13 amounts to nothing more than a harmless error at best and

7  should not in any way affect Plaintiffs' right to an award of reasonable attorneys'

8  fees.

9

10  **V.   CONCLUSION**

11      For all of the foregoing reasons, Plaintiffs' motion for reasonable attorneys'

12  fees and costs should be granted. [13]/

13

14  Dated: December 6, 2010     SCHONBRUN DESIMONE SEPLOW
                         HARRIS HOFFMAN & HARRISON LLP

15

16                      THE LAW OFFICES OF JOHN RAPHLING

17            By: _____

18                      Benjamin Schonbrun
                       Michael D. Seplow

19                      John Raphling
                       Attorneys for Plaintiffs

20

21

---

22      12. In their response to Interrogatory No. 13, Plaintiffs asserted objections

23  to the interrogatory as being "vague, ambiguous and overly broad" and also on the
   grounds that it seeks information protected from disclosure by the attorney client

24  and/or attorney work product privileges."  Plaintiffs' responses were made
   "subject to and without waiving these objections." [Schonbrun Decl. at ¶8]

25

26      13. Defendants have failed to challenge Plaintiffs' request for
   reimbursement for out of pocket costs in the amount of $13,542.93. Accordingly,

27  this Court should award Plaintiffs these reasonable costs. *See Dang v. Cross*, 422

28  F.3d 800, 814 (9th Cir. 2005).